## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICK HARTMAN, individually and on
behalf of all others similarly situated,

                 Plaintiff,

                 v.

PATHMARK STORES, INC.,
WILLIAM J. BEGLEY, WARREN F.
BRYANT, DANIEL H. FITZGERALD,
EUGENE M. FREEDMAN, BRUCE
HARTMAN, JAMES L. MOODY, JR.,
EILEEN R. SCOTT, AND FRANK G.
VITRANO,

                 Defendants.

CIVIL ACTION NO. 05-403(JJF)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## BY RICK HARTMAN, FOR APPOINTMENT AS LEAD PLAINTIFF
## AND FOR APPROVAL OF LEAD PLAINTIFF'S
## SELECTION OF LEAD COUNSEL

Dated: August 15, 2005

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Arthur Stock
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4636 (Fax)

**BERGER & MONTAGUE, P.C.**
Abbott A. Leban (Del. Bar No. 3751)
919 Market Street, Suite 425
Wilmington, DE 19801
(302) 571-8626
(302) 571-8602 (Fax)
*Proposed Lead Counsel*

**PRICKETT, JONES & ELLIOTT, P.A.**
Elizabeth M. McGeever (Del. Bar No. 2057)
1310 King Street, P.O. Box 1328
Wilmington, DE 19899-1328
(302) 888-6500
(302) 658-8111 (Fax)
*Proposed Local Counsel*

## TABLE OF CONTENTS

NATURE OF THE ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    HARTMAN SHOULD BE APPOINTED
      LEAD PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    The Procedures Mandated By The PSLRA . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Hartman Satisfies The Requirements Of The Act . . . . . . . . . . . . . . . . . . . 6

            1.    Hartman Believes That He Has The Largest
                  Financial Interest In The Relief Sought By The Class . . . . . . . . . . . . 6

            2.    Hartman Satisfies The Requirements Of
                  Rule 23 Of The Federal Rules Of Civil Procedure . . . . . . . . . . . . . . 7

            3.    Hartman's Claims Are Typical Of The Claims
                  Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            4.    Hartman Will Fairly And Adequately
                  Represent The Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . . . 9

II.   THIS COURT SHOULD APPROVE HARTMAN'S CHOICE
      OF LEAD AND LOCAL COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
BY RICK HARTMAN, FOR APPOINTMENT AS LEAD PLAINTIFF
AND FOR APPROVAL OF LEAD PLAINTIFF'S
SELECTION OF LEAD COUNSEL**

Rick Hartman respectfully submits this memorandum of law in support of his Motion: (a) for his appointment as Lead Plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4; and (b) for approval of his selection of Berger & Montague, P.C. as Plaintiff's Lead Counsel. Hartman is the only person to have filed a Complaint in this action, and is believed to be the investor with the largest financial interest in the outcome of the case.[1] As such, Hartman meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover, Hartman satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the class, and he will fairly and adequately represent the interests of the class.

## NATURE OF THE ACTION

The Defendants in this case are Pathmark, Inc. and the members of its Board of Directors. Plaintiff Rick Hartman was a shareholder of Pathmark at all relevant times, and seeks to represent a class of all Pathmark shareholders, alleging proxy disclosure law violations and breach of fiduciary duty in connection with a June shareholder vote on a significant corporate transaction.

The Complaint alleges as follows:

---

[1]      Hartman's certification listing his holdings of Pathmark stock, as required by §21D(a)(2) of the PSLRA, is attached to the accompanying Declaration of Arthur Stock ("Stock Decl.") as Exhibit A.

On May 6, 2005, Defendants caused Pathmark to issue a Definitive Proxy Statement to shareholders of record as of May 6, 2005, seeking approval of a proposed transaction whereby The Yucaipa Companies LLC ("Yucaipa") would invest $150 million cash in Pathmark, in exchange for:

a.    20,000,000 shares of Pathmark common stock;

b.    Class A warrants to purchase 10,060,000 additional shares at $8.50 per share; and

c.    Class B warrants to purchase 15,046,350 additional shares at $10.46 per share.

According to the Proxy Statement, using widely accepted methods of valuing warrants, Pathmark's financial advisor calculated that Yucaipa was paying an implied value of between $6.77 and $7.17 per share for the Pathmark common stock.  Hartman Complaint, ¶ 15.

The terms of this investment had been set forth in a Purchase Agreement between Yucaipa and Pathmark dated March 23, 2005, and were subject to approval of Pathmark shareholders.  If shareholders approved this transaction (the "Yucaipa Transaction"), its consummation would result in Yucaipa owning between 40 and 50% of the outstanding shares of Pathmark, depending on whether Yucaipa exercised the warrants.  The Yucaipa Transaction provided no direct payment to Pathmark's existing shareholders.  ¶ 16.

The Board of Directors of Pathmark recommended that shareholders vote for the Yucaipa Transaction.  ¶ 18.  Voting was scheduled to take place at a special shareholders' meeting set for June 9, 2005, at corporate headquarters in Carteret, New Jersey.  ¶ 19.

Defendants caused Pathmark to issue amendments to the Proxy Statement that were filed with the Securities Exchange Commission on May 26, May 31, June 2, and June 3, 2005.  The May 26 Amendment described a proposal from one unnamed bidder (the "May 19 offer") to purchase 100% of all shares of Pathmark common stock at $8.75 per share, subject to "confirmatory due

2

diligence." That offer had been rejected by the Board of Directors on May 24. The May 26 Amendment stated that the May 19 offer had been rejected, because inter alia, it appeared that financing could not be obtained by the buyer, and it appeared that the proposed transaction could not be completed for months. ¶ 22.

On June 1, 2005, the Board of Directors received a new proposal from the same bidder, open until June 8, offering $8.75 per share for all outstanding shares, no longer subject to any due diligence (the "June 1 Offer"). That bidder revised its proposal while maintaining the price of $8.75 per share, by letters of June 2, 3, and 4, extending the time period through June 10. Unlike the Yucaipa Transaction, the June 1 Offer, would have resulted in cash payments to Pathmark stockholders. ¶ 23.

The Board of Directors did not disclose the existence of the June 1 Offer to shareholders in either its June 2 or June 3 Amendments to the Proxy Statement. The Board also determined that it would not change the date of the shareholder meeting to allow shareholders time to consider whether the June 1 Offer represented a material change of circumstances that might be relevant to the upcoming vote on the Yucaipa Transaction. It also declined to attempt further negotiations with either the June 1 bidder or Yucaipa. ¶ 24.

The Board disclosed the June 1 Offer through an Amendment to the Proxy Statement filed with the SEC on June 7, 2005, just two days before the shareholder meeting. By that date, any mailed ballots would already have been cast, and revocations could not reasonably be expected to arrive before the shareholders' meeting. Thus, this notice was of little practical value to shareholders. The Board of Directors again determined not to postpone the vote, and not to change its recommendation in favor of the Yucaipa Transaction. ¶ 25.

On June 9, the shareholders' meeting was held. The Yucaipa Transaction was approved by the requisite shareholder vote, and the alternative cash-out proposal was effectively withdrawn. ¶ 26.

The Complaint alleges that Pathmark and its directors violated the Exchange Act by omitting any explanation of the June 1 Offer from the June 2, 3 and 4 proxy updates, withholding that information from shareholders until June 7, only two days before the end of the election after mailed ballots would have been sent. ¶ 29. The Complaint further alleges that the Defendants breached their fiduciary duties to shareholders by entering into a Purchase Agreement with Yucaipa containing a "force the vote" provision; refusing to postpone the shareholders' meeting and continuing to recommend a favorable vote on the Yucaipa Transaction even after an alternative offer was made on June 1, 2005; and declining to continue negotiations with interested bidders after the receipt of the June 1 Offer. ¶ 40.

## I.    HARTMAN SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedures Mandated By The PSLRA

The PSLRA has established a procedure that governs the appointment of Lead Plaintiffs in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(I).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiffs. 15 U.S.C. §78u-4(a)(3)(A)(I). Here, Hartman's counsel caused the first notice to be published on May 2, 2005. (Exh. B, Stock Decl.) This notice stated that any motion for the appointment as lead plaintiff was due "not later than August 15, 2005."

4

The PSLRA states that within sixty (60) days after the publication of the notice mandated by the PSLRA, any "person or group of persons" who are members of the proposed class may apply to the court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action.  15 U.S.C. §78u-4(a)(A) and (B).  Hartman has timely filed this motion before the expiration of the 60-day period from such publication.

The PSLRA further provides that within 90 days after publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff(s) the member or members of the class that the Court determines to be most capable of adequately representing the interests of the class members, 15 U.S.C. §78u-4(a)(3)(B).  In determining who is the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that
>
> > (aa)    has either filed the complaint or made a motion in response to a notice. …
> >
> > (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

5

**B.**    **Hartman Satisfies The Requirements Of The Act**

      **1.**    **Hartman Believes That He Has The Largest**
            **Financial Interest In The Relief Sought By The Class**

One of the key factors in the selection of lead plaintiff under the PSLRA is the court's determination as to which person or group of persons has the largest financial interest in the relief sought by the class.

The "most adequate plaintiff" provision of the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

§21D(a)(3)(B)(I). Moreover, pursuant to §21D(a)(3)(B)(iii), the Court shall presume:

> that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
>                            \* \* \*
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class

Numerous courts have interpreted this language to mean that the person or group who has the largest financial stake in the litigation is presumed to be the "most adequate" plaintiff to represent the class. *See e.g., In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).

Hartman held 210 shares of Pathmark common stock at all times relevant to this action. Thus, as contemplated by Congress, Hartman will most effectively represent the interests of the plaintiff class. In addition, the proposed Lead Plaintiff has selected and retained Berger &

6

Montague, P.C., and Prickett, Jones & Elliott, P.A., which are highly experienced in prosecuting securities actions. *See* Exhs. C and D to Stock Decl. Accordingly, the proposed Lead Plaintiff satisfies the prerequisites for appointment as Lead Plaintiff under section 21D(a)(3)(B).

### 2.    Hartman Satisfies The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure

Section 21(D)(3)(B) of the Exchange Act further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the proposed class representatives. Consequently, in deciding a motion to appoint lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the plaintiff moves for class certification. *See, e.g., Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 407 at n. 8 (D. Minn. 1998)("a proposed lead plaintiff need only make a preliminary showing that he or she satisfies the typicality and adequacy requirements of Rule 23"); *Gluck v. CellStar Corp.,* 976 F. Supp. at 546. As detailed below, Hartman satisfies the typicality and adequacy requirements of Rule 23.

### 3.    Hartman's Claims Are Typical Of The Claims Of The Class

Generally, the typicality requirement is satisfied if the claims arise from the same event, practice or course of conduct that gives rise to the claims of the class members, and are based on the same legal theory. *See Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3rd Cir. 1985); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992); *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 78-79 (D. Md. 1991); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 406-07 (D.N.J. 1990)( typicality satisfied if class representatives and its members point to the same broad course of alleged fraudulent conduct). Indeed, to satisfy typicality, the claims of the class representatives do not have to be identical to those of the class members. *Eisenberg v. Gagnon*, 766 F.3d at 786. The focus of the typicality inquiry is not plaintiffs' behavior, but defendants' behavior. *In re Electro-Catheter Sec. Litig.*, [1987-88 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,643 at 97,931 (D.N.J. 1987).

Hartman satisfies this requirement because, just like all other class members, he: (1) held Pathmark shares at the time of the proxy statement, the amendments to the proxy statement, and the shareholder vote; (2) was deprived of critical information concerning the offer of a competing bidder at the time of the vote; (3) was deprived of any additional consideration that either Pathmark or individual shareholders could have received had Pathmark's directors continued negotiations with Yucaipa and the competing bidder; and (4) suffered damages thereby. Thus, his claims are typical of those of other class members since its claims and the claims of the other class members arise out of the same course of events. Because Hartman seeks to prove that plaintiffs' claims arise from the same events, practice or course of conduct that give rise to the claims of the other class members, and because Hartman's claims are based on the same legal theories, the typicality requirement of

8

Rule 23(a)(3) is satisfied. *See, Simpson v. Specialty Retail Concepts,* 149 F.R.D. 94, 98 (M.D.N.C. 1993).

### 4.    Hartman Will Fairly And Adequately Represent The Interests Of The Class

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. This requirement is met if it appears that (1) the named plaintiff has interests in common with, and not antagonistic to, the class' interests; and (2) the plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *See, e.g., In re Drexel Lambert Group, Inc.,* 960 F.2d 285, 291 (2d. Cir. 1992); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 800 (3d Cir. 1995); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3rd Cir. 1975). *See also, Simpson,* 149 F.R.D. at 102; *Kirschner,* 139 F.R.D. at 79.

Hartman is an adequate representative of the Class. The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Proposed Lead Plaintiff to represent the Class to the existence of any conflicts between the interests of the Proposed Lead Plaintiff and the members of the Class, and then allow the lead plaintiff to retain lead counsel to represent the Class, "subject to the approval of the court." *See* 15 U.S.C. §78u4(a)(3)(B)(v).

The interests of Hartman are clearly aligned with the members of the Class, and there is no evidence of any antagonism between the interests of Hartman and the Class. As detailed above, Hartman shares numerous common questions of law and fact with the members of the Class and his claims are typical of the claims of other Class members. Further, Hartman has selected Berger & Montague, P.C. and Prickett, Jones & Elliott, P.A. to represent it, firms that are highly experienced in prosecuting class actions. Moreover, Hartman has a substantial stake in the litigation.

9

## II.    THIS COURT SHOULD APPROVE HARTMAN'S CHOICE OF LEAD AND LOCAL COUNSEL

The PSLRA vests authority in the lead plaintiff, subject to court approval, to select and retain lead counsel. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *see also, e.g., Lax v. First Merchants Acceptance Co.,* 1997 WL 405668 at *5 (N.D. Ill. Aug. 11, 1997). The Court should not disturb the proposed lead plaintiff's choice of counsel unless necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. §78u4(a)(3)(B)(iii)(II)(aa). *See In re MicroStrategy Inc. Sec. Litig.,* 110 F. Supp.2d 427, 438 (E.D. Va. 2000) ("The PSLRA plainly states that a district court's duty is to appoint a lead plaintiff based on the relevant statutory criteria . . . it is the lead plaintiff's duty to select and retain counsel to represent the class . . . a district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources ..."). Congress' theory in enacting these provisions "was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a "real" client, carefully choosing counsel and monitoring counsel's performance ..." *In re: Razorfish, Inc. Securities Litigation,* 143 F. Supp. 2d 304, 307 (S.D. N.Y. 2001).

Accordingly, Hartman has selected and retained Berger & Montague, P.C., and Prickett, Jones & Elliott, P.A. which possess extensive experience in the area of securities and corporate litigation and have successfully prosecuted numerous securities and corporate actions on behalf of injured investors. *See* Resumes of Berger & Montague, P.C. and Prickett, Jones & Elliott, P.A. (Exhs. C and D to Stock Decl.) Thus, the Court may be assured that, in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available.

III.    **CONCLUSION**

For all the foregoing reasons, Hartman respectfully requests that the Court consolidate

these actions and appoint him as lead plaintiff under Section 21D(a)(3)(B) of the PSLRA.

Hartman further requests that the Court approve his choice of Berger & Montague, P.C. as

Plaintiff's Lead Counsel and Prickett, Jones & Elliott, P.A. as Local Counsel.

Dated: August 15, 2005                    Respectfully submitted,


**PRICKETT, JONES & ELLIOTT, P.A.**
Elizabeth M. McGeever (Del. Bar No. 2057)
1310 King Street, P.O. Box 1328
Wilmington, DE 19899-1328
(302) 888-6500
(302) 658-8111 (Fax)

*Proposed Local Counsel*

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Arthur Stock
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4636 (Fax)

and

**BERGER & MONTAGUE, P.C.**
Abbott A. Leban (Del. Bar No. 3751)
919 Market Street, Suite 425
Wilmington, DE 19801
(302) 571-8626
(302) 571-8602 (Fax)

*Proposed Lead Counsel*

PathMem.wpd                              11

## CERTIFICATE OF SERVICE

I, Elizabeth M. McGeever, hereby certify that on this 15th day of August, 2005, I electronically filed the foregoing (1) MOTION (AND PROPOSED ORDER) BY RICK HARTMAN, FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL; (2) DECLARATION OF ARTHUR STOCK IN SUPPORT OF MOTION BY RICK HARTMAN, FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL; and (3) MEMORANDUM OF LAW IN SUPPORT OF MOTION BY RICK HARTMAN, FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> William M. Lafferty, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE 19801

Elizabeth M. McGeever (#2057)