# EXHIBIT B

```
<DOCUMENT>
<TYPE>DEFA14A
<SEQUENCE>1
<FILENAME>defa14a_052505.txt
<DESCRIPTION>DEFINITIVE ADDITIONAL MATERIALS
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549


SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934


Filed by the Registrant [X]
Filed by a Party other than the Registrant [ ]

Check the appropriate box:

[ ] Preliminary proxy statement
[ ] Confidential, For Use of the Commission Only (as permitted by Rule
    14a-6(e)(2))
[ ] Definitive Proxy Statement
[X] Definitive Additional Materials
[ ] Soliciting Material Pursuant to Rule 14a-12



PATHMARK STORES, INC.
(Name of Registrant as Specified in Its Charter)

N/A
(Name of Person(s) Filing Proxy Statement, if Other Than Registrant)

Payment of Filing Fee (Check the appropriate box):
[X] No fee required.

[ ] Fee computed below per Exchange Act Rules 14a-6(i)(1) and 0-11.

        (1) Title of each class of securities to which transaction applies:

        ------------------------------------------------------------------

        (2) Aggregate number of securities to which transaction applies:

        ------------------------------------------------------------------

        (3) Per unit price or other underlying value of transaction computed
            pursuant to Exchange Act Rule 0-11. (Set forth the amount on which
            the filing fee is calculated and state how it was determined):

        ------------------------------------------------------------------

        (4) Proposed maximum aggregate value of transaction:

        ------------------------------------------------------------------

        (5) Total fee paid:

------------------------------------------------------------------------

[ ] Fee paid previously with preliminary materials.
[ ] Check box if any part of the fee is offset as provided by Exchange Act Rule
    0-11(a)(2) and identify the filing for which the offsetting fee was paid
    previously. Identify the previous filing by registration statement number,
    or the Form or Schedule and the date of its filing.

Amount Previously Paid:

(1) Amount Previously Paid:
(2) Form, Schedule or Registration Statement No.:
(3) Filing Party:
(4) Date Filed:

<PAGE>


The following is an update to, and is hereby incorporated into, Pathmark Stores,
Inc.'s Definitive Proxy Statement (the "Proxy Statement") on Schedule 14A, filed
with the Securities and Exchange Commission on May 6, 2005, on page 22 at the
end of "THE PROPOSED TRANSACTION - Background of the Proposed Transaction".
Accordingly, the following should be read as part of, and in conjunction with,
the Proxy Statement. Capitalized terms used but not otherwise defined herein
shall have the meanings ascribed thereto in the Proxy Statement.

Update to Background of the Proposed Transaction

        Following the filing of the proxy statement, Bidder No. 2 and its
co-investor sent a letter to the Company on May 8 setting forth a new proposal,
the "May 8 Proposal", together with, among other materials, (i) a new mark-up of
Bidder No. 2's draft merger agreement, (ii) draft forms of equity commitment
letters from each of Bidder No. 2 and its co-investor, and (iii) a new
commitment letter from Bidder No. 2's lead source of debt financing. The May 8
Proposal proposed the same structure as the earlier Option B to acquire 100% of
the outstanding shares of common stock from stockholders, but proposed to
increase the purchase price from $8.25 to $8.30 per share. On its terms, the May
8 Proposal would, and did, expire at 5:00 p.m. on May 16, 2005.

        The Company's board of directors met on May 11 to consider the May
8 Proposal. After Shearman & Sterling LLP and DrKW reviewed the May 8 Proposal
with the board of directors, the board of directors determined that the May 8
Proposal would not reasonably be expected to result in a superior proposal, as
such term is defined in the Purchase Agreement, because the May 8 Proposal: (i)
proposed a per share price considerably below the recent trading prices of the
shares of common stock, with consistently higher trading volumes compared to the
most recent one-year daily average for such shares; (ii) was unlikely to be able
to be completed for several months, while the proposed transaction with Yucaipa
could, subject to the approval of the Company's stockholders, likely be
completed by the middle of June; (iii) remained subject to the completion of
Bidder No. 2's confirmatory due diligence; and (iv) while the most recent
mark-up of the draft merger agreement by Bidder No. 2 did not contain a
financing condition, was still dependent on obtaining debt financing and Bidder
No. 2 had not entered into definitive agreements to obtain such financing.

        On May 12, Bidder No. 2 sent a letter to the Company conveying
Bidder No. 2's disappointment that the board of directors had decided, on May 6,
to discontinue discussions with Bidder No. 2 after determining that the New
Proposal (made in Bidder No. 2's letter of May 5) would not reasonably be

expected to result in a superior proposal. In addition, Bidder No. 2 expressed the view that it believed the proxy statement to be misleading with respect to its description of certain aspects of the New Proposal - in particular the statement that the New Proposal was not accompanied by evidence of debt or equity financing and an implication that Bidder No. 2 was unable to meet its own timetable. The letter, however, also reconfirmed Bidder No. 2's desire to pursue the May 8 Proposal.

The Company does not believe that the description of the New Proposal contained in the proxy statement is misleading. The board of directors, in determining that the New Proposal would not reasonably be expected to result in a superior proposal, noted among other things that the New Proposal was not accompanied by evidence of debt or equity financing. Bidder No. 2 had provided the Company with oral representations that the draft merger agreement would not contain a "financing out". However, the New Proposal was not accompanied by any evidence of debt financing in support of the increased proposed purchase price. Moreover, there was no evidence that the co-investor supported the increased proposed purchase price, and the co-investor was not mentioned in Bidder No. 2's letter of May 5 - even though the May 8 Proposal subsequently indicated that the co-investor was responsible for nearly two-thirds of the equity financing. Evidence of the necessary debt financing and co-investor support was provided only with the May 8 Proposal. With respect to timing, the Company did not imply Bidder No. 2's ability to meet its own timetable was a reason the Company rejected the New Proposal, only that, when compared to the proposed transaction, the New Proposal provided less certainty and could not be completed as quickly.

On May 19, Bidder No. 2 and its co-investor sent a letter to the Company setting forth a new proposal, the "May 19 Proposal", together with, among other materials, (i) a new mark-up of Bidder No. 2's draft merger agreement, (ii) draft forms of equity commitment letters from each of Bidder No. 2 and its co-investor, and (iii) a new commitment letter from Bidder No. 2's lead source of debt financing. The May 19 Proposal, like the May 8 Proposal, proposed the same structure as the earlier Option B to acquire 100% of the outstanding shares of common stock from stockholders, but proposed to increase the purchase price from $8.30 to $8.75 per share. On its

2

<PAGE>

terms, the May 19 Proposal would, and did, expire at 5:00 p.m. on May 24, 2005. However, the May 19 Proposal also indicated that Bidder No. 2 expected that it would "require less than 4-5 business days to complete its limited remaining confirmatory due diligence and reach a mutually acceptable merger agreement with the Company."

The Company's board of directors met during the morning of May 24 to consider the May 19 Proposal. After Shearman & Sterling LLP and DrKW reviewed the May 19 Proposal with the board of directors, the board of directors determined that the May 19 Proposal would not reasonably be expected to result in a superior proposal, as such term is defined in the Purchase Agreement, because the May 19 Proposal: (i) was, while not formally conditioned on, still dependent on obtaining debt financing and included a commitment letter for such financing that contained conditions precedent that the Company's management did not expect to be achievable (the requirement that the Company have at the closing a ratio of total debt (which was left undefined in the commitment letter) to EBITDA no greater than 4.2 to 1.0 for the four fiscal quarter period most recently ended (compared to the Company's current total debt to EBITDA ratio of 4.6 to 1.0 as of January 29, 2005, based on the definition of EBITDA contained in the Company's current credit facility) and the

requirement that there be a minimum remaining availability of $50 million under Bidder No. 2's new $200 million revolving credit facility, which the Company's management did not expect to be achievable given Bidder No. 2's proposed use of up to $42 million of this credit facility to fund the May 19 Proposal, the Company's need for approximately $100 million in letters of credit if it completed a merger transaction with Bidder No. 2 and Bidder No. 2's incorrect assumption that the Company would have $12.6 million in excess cash available); (ii) proposed a per share price below the recent trading prices of the shares of common stock; (iii) remained subject to the completion of Bidder No. 2's confirmatory due diligence; and (iv) was unlikely to be able to be completed for several months, while the proposed transaction with Yucaipa could, subject to the approval of the Company's stockholders, likely be completed by the middle of June. In addition, the board of directors determined to reconfirm its recommendation of the proposed transaction with Yucaipa to the Company's stockholders.

3

</TEXT>
</DOCUMENT>

# EXHIBIT C

```
<DOCUMENT>
<TYPE>DEFA14A
<SEQUENCE>1
<FILENAME>defa14a_052705.txt
<DESCRIPTION>DEFINITIVE ADDITIONAL MATERIALS
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549


SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934

Filed by the Registrant [X]
Filed by a Party other than the Registrant [ ]

Check the appropriate box:

[ ] Preliminary proxy statement

[ ] Confidential, For Use of the Commission Only (as permitted by
    Rule 14a-6(e)(2))
[ ] Definitive Proxy Statement
[X] Definitive Additional Materials
[ ] Soliciting Material Pursuant to Rule 14a-12


PATHMARK STORES, INC.
(Name of Registrant as Specified in Its Charter)

(Name of Person(s) Filing Proxy Statement, if Other Than Registrant)

Payment of Filing Fee (Check the appropriate box):

[X] No fee required.

[ ] Fee computed below per Exchange Act Rules 14a-6(i)(1) and 0-11.

(1)  Title of each class of securities to which transaction applies:

    ----------------------------------------------------------------------

(2)  Aggregate number of securities to which transaction applies:

    ----------------------------------------------------------------------

(3)  Per unit price or other underlying value of transaction computed pursuant
     to Exchange Act Rule 0-11. (Set forth the amount on which the filing fee is
     calculated and state how it was determined):

    ----------------------------------------------------------------------

(4)  Proposed maximum aggregate value of transaction:

----------------------------------------------------------------

(5)  Total fee paid:

----------------------------------------------------------------

[ ]  Fee paid previously with preliminary materials.

[ ]  Check box if any part of the fee is offset as provided by Exchange Act
     Rule 0-11(a)(2) and identify the filing for which the offsetting fee was
     paid previously. Identify the previous filing by registration statement
     number, or the Form or Schedule and the date of its filing.

Amount Previously Paid:

(1) Amount Previously Paid:
(2) Form, Schedule or Registration Statement No.:
(3) Filing Party:
(4) Date Filed:

<PAGE>


The following is an update to, and is hereby incorporated into, Pathmark Stores,
Inc.'s Definitive Proxy Statement (the "Proxy Statement") on Schedule 14A filed
with the Securities and Exchange Commission on May 6, 2005. Capitalized terms
used but not otherwise defined herein shall have the meanings ascribed thereto
in the Proxy Statement.

Additional Participants in the Solicitation

        Each of the Investors, The Yucaipa Companies, LLC ("Yucaipa"), their
respective directors, and certain of their respective executive officers and
employees, including, without limitation, Ronald W. Burkle, Managing Member of
Yucaipa, Michael Duckworth, a Partner at Yucaipa, and Cameron Reilly, an
Associate at Yucaipa, may be considered participants in the Company's
solicitation of proxies in connection with the proposed transaction. As of the
date hereof, Yucaipa American Alliance Fund I, LP ("YAAF") is the owner of 100
shares of the Company's common stock. Mr. Burkle is the Managing Member of
Yucaipa American Alliance Fund I, LLC, which is the general partner of YAAF. By
virtue of this relationship, Mr. Burkle may be deemed to be the beneficial owner
of the shares of the Company's common stock owned by YAAF. Mr. Burkle disclaims
such ownership except to the extent of his pecuniary interest therein.

        Each of the participants named above may solicit proxies on behalf of
the Company personally and by telephone, facsimile or other electronic means of
communication. These persons will not receive additional or special compensation
for such solicitation services, and any costs or expenses incurred by them in
connection with any such solicitation will be paid by the Investors and/or
Yucaipa. In the event that any written materials are furnished to stockholders
in connection with any such solicitation, such materials will be filed with the
SEC and made available to all of the Company's stockholders in accordance with
applicable federal securities laws.

6/17/2005

```
</TEXT>
</DOCUMENT>
```

# EXHIBIT D

```
<DOCUMENT>
<TYPE>DEFA14A
<SEQUENCE>1
<FILENAME>defa14a_060105.txt
<DESCRIPTION>DEFINITIVE ADDITIONAL MATERIALS
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549


SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934

Filed by the Registrant [X]
Filed by a Party other than the Registrant [ ]

Check the appropriate box:

[ ]  Preliminary proxy statement

[ ]  Confidential, For Use of the Commission Only (as permitted by Rule
     14a-6(e)(2))
[ ]  Definitive Proxy Statement
[X]  Definitive Additional Materials
[ ]  Soliciting Material Pursuant to Rule 14a-12


PATHMARK STORES, INC.
(Name of Registrant as Specified in Its Charter)
N/A
(Name of Person(s) Filing Proxy Statement, if Other Than Registrant)

Payment of Filing Fee (Check the appropriate box):
[X] No fee required.

[ ] Fee computed below per Exchange Act Rules 14a-6(i)(1) and 0-11.

    (1) Title of each class of securities to which transaction applies:


    ------------------------------------------------------------------

    (2) Aggregate number of securities to which transaction applies:


    ------------------------------------------------------------------

    (3) Per unit price or other underlying value of transaction computed
        pursuant to Exchange Act Rule 0-11. (Set forth the amount on which the
        filing fee is calculated and state how it was determined):


    ------------------------------------------------------------------

    (4) Proposed maximum aggregate value of transaction:

------------------------------------------------------------------------

(5) Total fee paid:

------------------------------------------------------------------------

[ ] Fee paid previously with preliminary materials.
[ ] Check box if any part of the fee is offset as provided by Exchange Act
    Rule 0-11(a)(2) and identify the filing for which the offsetting fee was
    paid previously. Identify the previous filing by registration statement
    number, or the Form or Schedule and the date of its filing.

Amount Previously Paid:

(1) Amount Previously Paid:
(2) Form, Schedule or Registration Statement No.:
(3) Filing Party:
(4) Date Filed:


<PAGE>


Following the receipt of questions from certain stockholders and others seeking
clarification of certain information contained in the Definitive Proxy Statement
(the "Proxy Statement") of Pathmark Stores, Inc. (the "Company") on Schedule
14A, filed with the Securities and Exchange Commission on May 6, 2005, and
amended on May 26, 2005 and May 31, 2005, the Company is providing the following
additional disclosure in response to such questions. Capitalized terms used but
not otherwise defined herein shall have the meanings ascribed thereto in the
Proxy Statement.

Q: Why did the Company grant a two-week exclusivity period to Yucaipa when there
still appeared to be other possible bidders?

A: The Company's board of directors determined to grant a two-week exclusivity
agreement to Yucaipa, in light of:

     o    the price-level signaled by Yucaipa (which represented a significant
          increase from its initial indication of interest) and the fact that
          Yucaipa was refusing to move forward without exclusivity;

     o    the execution risks associated with the other possible transactions,
          including the risk that employee departures in reaction to a possible
          break-up of the business would make it difficult to maintain the
          Company's business intact until closing;

     o    the fact that Bidder No. 4 and Bidder No. 2 had both indicated that
          they were several weeks away from being ready to sign a definitive
          acquisition agreement;

     o    the absence of evidence of financing for Bidder No. 2 and a number of
          unresolved questions regarding the financing for Bidder No. 4; and

     o    the very limited due diligence Bidder No. 2 had conducted, even though
          Bidder No. 2 had been given the opportunity to conduct due diligence
          over more than four months.

Q:  Why did the Company enter into the Purchase Agreement with Yucaipa when there still appeared to be other possible transactions?

A: At the time the Company entered into the Purchase Agreement, the Company's board of directors believed that the proposed transaction represented the best option because of the generally successful record of Yucaipa's investment performance, the fact that the Company's stockholders would have the ability to share in any upside that might result from any future improved performance on the part of the Company and the fact that the Company's board of directors could still accept a superior proposal in accordance with the terms of the Purchase Agreement. (For a discussion of the Company's board of directors' other reasons for entering into the proposed transaction, see "THE PROPOSED TRANSACTION - Reasons for the Proposed Transaction" beginning on page 22 of the Proxy Statement.) Additionally, at the time the Company entered into the Purchase Agreement, the other two possible bidders - Bidder No. 2 and Bidder No. 4 - each had significant unresolved issues, including the facts that:

    o    Bidder No. 2 had indicated that it was several weeks away, and Bidder No. 4 had indicated that it was at least several days away, from being ready to sign a definitive acquisition agreement, so that there were no assurances that either would, in fact, sign such an agreement on terms satisfactory to the Company's board of directors;

    o    there were execution risks associated with Bidder No. 2's and Bidder No. 4's possible transactions, including the risk associated with Bidder No. 4's possible transaction that employee departures in reaction to a possible break-up of the business would make it difficult to maintain the Company's business intact until closing;

    o    a number of unresolved questions remained regarding the financing for Bidder No. 2, including the fact that the commitment letter for Bidder No. 2's debt financing was subject to the completion of the lead lender's due diligence and the fact that Bidder No. 2's draft merger agreement was conditioned on the receipt of debt financing;

    o    Bidder No. 4's letter of March 21 included no evidence of financing; and

    o    Bidder No. 2 had conducted very limited due diligence, even though Bidder No. 2 had been given the opportunity to conduct due diligence over more than four months.

<center>2</center>

&lt;PAGE&gt;

Q: May the Company's board of directors change its recommendation with respect to the proposed transaction before the special meeting?

A: Yes. If an acquisition proposal (as defined in the Purchase Agreement) is made before the special meeting, the Company's board of directors may withdraw or modify its recommendation of the proposed transaction with Yucaipa if the Company's board of directors:

    o    concludes in its good faith judgment that the acquisition proposal is a superior proposal (as defined in the Purchase Agreement);

    o    determines in good faith, after consultation with outside counsel,

that it would otherwise constitute a breach of its fiduciary duty to stockholders not to withdraw or modify its recommendation of the proposed transaction; and

o   has given at least three business days notice to Yucaipa of its intention to withdraw or modify its recommendation of the proposed transaction.

Q:  What is the effect if the Company's board of directors changes its recommendation with respect to the proposed transaction?

A:  If the Company's board of directors were to withdraw or modify its recommendation of the proposed transaction with Yucaipa before the special meeting of stockholders, the Company would (so long as Yucaipa did not exercise its termination rights) nevertheless be required under the terms of the Purchase Agreement to hold a special meeting and provide the stockholders with an opportunity to vote on the proposed transaction. (This is commonly referred to as a "force the vote" provision.) However, Yucaipa has informed the Company that none of the Company's stockholders has contractually agreed with Yucaipa to vote in favor of the proposed transaction. Accordingly, each of the Company's stockholders is free to vote for or against, or to abstain from voting in respect of, the transaction in its discretion, regardless of whether the board of directors' recommendation has been changed.

Q:  Why did the Company agree to include a "force the vote" provision in the Purchase Agreement with Yucaipa?

A:  We agreed to include a "force the vote" provision in the Purchase Agreement for a number of reasons, including:

o   the provision was negotiated between the Company and Yucaipa as part of an extended, arm's-length negotiation of the terms and conditions of the Purchase Agreement and each of the other ancillary agreements;

o   at the end of the negotiations, the Company's board of directors determined that the most important issue to focus on was to seek to maximize the powers of the Company's independent directors so that they would be better able to protect the interests of the Company's public stockholders following the closing of the proposed transaction;

o   Yucaipa was prepared to expand the extent of the veto powers of the Company's independent directors in return for the Company's accepting the "force the vote" provision Yucaipa had requested;

o   the Company's board of directors had been advised by Shearman & Sterling LLP that such provisions were not uncommon; and

o   Yucaipa informed the Company that Yucaipa believed that it was important to include the provision because, in its view, the proposed transaction was fundamentally different than a sale of the Company, would not be directly comparable to alternative acquisition proposals and that, as a result, the Company's stockholders should be given the opportunity to consider and vote on the proposed transaction even if the board of directors were to change its recommendation.

As a result of this provision, so long as Yucaipa does not exercise any termination rights it may have, the Company's stockholders will be given an opportunity to vote on the proposed transaction before any alternative transaction can be voted on.

3

```
</TEXT>
</DOCUMENT>
```

# EXHIBIT E

```
<DOCUMENT>
<TYPE>DEFA14A
<SEQUENCE>1
<FILENAME>defa14a_060305.txt
<DESCRIPTION>DEFINITIVE ADDITIONAL MATERIALS
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549


SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934

Filed by the Registrant [X]
Filed by a Party other than the Registrant [ ]

Check the appropriate box:

[ ]  Preliminary proxy statement

[ ]  Confidential, For Use of the Commission Only (as permitted by Rule
     14a-6(e)(2))
[ ]  Definitive Proxy Statement
[X]  Definitive Additional Materials
[ ]  Soliciting Material Pursuant to Rule 14a-12


PATHMARK STORES, INC.
(Name of Registrant as Specified in Its Charter)
N/A
(Name of Person(s) Filing Proxy Statement, if Other Than Registrant)

Payment of Filing Fee (Check the appropriate box):
[X] No fee required.

[ ] Fee computed below per Exchange Act Rules 14a-6(i)(1) and 0-11.

    (1) Title of each class of securities to which transaction applies:


    ---------------------------------------------------------------------

    (2) Aggregate number of securities to which transaction applies:


    ---------------------------------------------------------------------

    (3) Per unit price or other underlying value of transaction computed
        pursuant to Exchange Act Rule 0-11. (Set forth the amount on which the
        filing fee is calculated and state how it was determined):


    ---------------------------------------------------------------------

    (4) Proposed maximum aggregate value of transaction:

------------------------------------------------------------------------

    (5) Total fee paid:

------------------------------------------------------------------------

[ ] Fee paid previously with preliminary materials.
[ ] Check box if any part of the fee is offset as provided by Exchange Act
    Rule 0-11(a)(2) and identify the filing for which the offsetting fee was
    paid previously. Identify the previous filing by registration statement
    number, or the Form or Schedule and the date of its filing.

Amount Previously Paid:

(1) Amount Previously Paid:
(2) Form, Schedule or Registration Statement No.:
(3) Filing Party:
(4) Date Filed:


<PAGE>

The following is an update to, and is hereby incorporated into, Pathmark Stores,
Inc.'s Definitive Proxy Statement (the "Proxy Statement") on Schedule 14A filed
with the Securities and Exchange Commission on May 6, 2005 and amended or
supplemented on May 26, 2005, May 31, 2005 and June 2, 2005. Capitalized terms
used but not otherwise defined herein shall have the meanings ascribed thereto
in the Proxy Statement.

Additional Proxy Solicitation Agent

        The Yucaipa Companies LLC ("Yucaipa") has retained MacKenzie Partners,
Inc. to assist it in the solicitation of proxies for the special meeting on
behalf of the Company. Yucaipa will pay MacKenzie Partners, Inc. a fee of up to
approximately $10,000, plus reimbursement of out-of-pocket expenses, for these
services.

</TEXT>
</DOCUMENT>

# EXHIBIT F

```
<DOCUMENT>
<TYPE>DEFA14A
<SEQUENCE>1
<FILENAME>defa14a_060605.txt
<DESCRIPTION>DEFINITIVE ADDITIONAL MATERIALS
<TEXT>
```

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549


SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934

Filed by the Registrant [X]
Filed by a Party other than the Registrant [ ]

Check the appropriate box:

[ ]  Preliminary proxy statement

[ ]  Confidential, For Use of the Commission Only (as permitted by Rule
     14a-6(e)(2))
[ ]  Definitive Proxy Statement
[X]  Definitive Additional Materials
[ ]  Soliciting Material Pursuant to Rule 14a-12


PATHMARK STORES, INC.
(Name of Registrant as Specified in Its Charter)
N/A
(Name of Person(s) Filing Proxy Statement, if Other Than Registrant)

Payment of Filing Fee (Check the appropriate box):
[X] No fee required.

[ ] Fee computed below per Exchange Act Rules 14a-6(i)(1) and 0-11.

     (1) Title of each class of securities to which transaction applies:

     ------------------------------------------------------------------------

     (2) Aggregate number of securities to which transaction applies:

     ------------------------------------------------------------------------

     (3) Per unit price or other underlying value of transaction computed
         pursuant to Exchange Act Rule 0-11. (Set forth the amount on which the
         filing fee is calculated and state how it was determined):

     ------------------------------------------------------------------------

     (4) Proposed maximum aggregate value of transaction:

------------------------------------------------------------------------

   (5) Total fee paid:

------------------------------------------------------------------------

[ ] Fee paid previously with preliminary materials.
[ ] Check box if any part of the fee is offset as provided by Exchange Act
    Rule 0-11(a)(2) and identify the filing for which the offsetting fee was
    paid previously. Identify the previous filing by registration statement
    number, or the Form or Schedule and the date of its filing.

Amount Previously Paid:

(1) Amount Previously Paid:
(2) Form, Schedule or Registration Statement No.:
(3) Filing Party:
(4) Date Filed:


<PAGE>

The following is an update to, and is hereby incorporated into, Pathmark Stores,
Inc.'s Definitive Proxy Statement (the "Proxy Statement") on Schedule 14A, filed
with the Securities and Exchange Commission on May 6, 2005, and amended or
supplemented on May 26, 2005, May 31, 2005, June 2, 2005 and June 3, 2005, on
page 22 at the end of "THE PROPOSED TRANSACTION - Background of the Proposed
Transaction". Accordingly, the following should be read as part of, and in
conjunction with, the Proxy Statement, as amended or supplemented. Capitalized
terms used but not otherwise defined herein shall have the meanings ascribed
thereto in the Proxy Statement.

Update to Background of the Proposed Transaction

    On June 1, Bidder No. 2 and its co-investor sent a letter (subsequently
amended by a letter sent on June 2) to the Company setting forth a new proposal,
the "June 1 Proposal", together with, among other materials, (i) a revised
mark-up of Bidder No. 2's draft merger agreement, (ii) draft forms of equity
commitment letters from each of Bidder No. 2 and its co-investor, and (iii) a
new commitment letter from Bidder No. 2's lead source of debt financing. The
June 1 Proposal, like the May 19 Proposal, proposed the same structure as the
earlier Option B to acquire 100% of the outstanding shares of common stock from
stockholders, and proposed the same purchase price as the May 19 Proposal of
$8.75 per share. However, the June 1 Proposal attempted to address a number of
the issues the Company's board of directors had considered regarding the May 19
Proposal, including eliminating the requirement that Bidder No. 2 be allowed
several days during which to conduct due diligence before signing a merger
agreement. The June 1 Proposal also emphasized that Bidder No. 2's proposed
merger agreement did not contain a financing condition. On its terms, the June 1
Proposal was set to expire at 5:00 p.m. on June 8, 2005.

    The Company's board of directors met during the morning of June 3 to
consider the June 1 Proposal. After Shearman & Sterling LLP and DrKW reviewed
the June 1 Proposal with the board of directors, the board of directors
determined that the June 1 Proposal would not reasonably be expected to result
in a superior proposal, as such term is defined in the Purchase Agreement,
because the June 1 Proposal: (i) was, while not formally conditioned on, still

dependent on obtaining debt financing in order to close and included a
commitment letter for such financing that contained conditions precedent that
the Company's board of directors was concerned presented a serious risk of not
being achievable (based on the Company's business plan that had previously been
provided to Bidder No. 2) at the time which could be reasonably anticipated for
the closing of a transaction with Bidder No. 2; (ii) was unlikely to be able to
be completed for several months, while the proposed transaction with Yucaipa
could, subject to the approval of the Company's stockholders, likely be
completed by the middle of June; (iii) provided less certainty of closing
(compared to the proposed transaction with Yucaipa), both due to the above
described concerns regarding Bidder No. 2's debt financing and due to the risk
of adverse developments in the Company's business or in the financial markets
while waiting for a transaction with Bidder No. 2 to close which, if significant
enough, could either jeopardize Bidder No. 2's financing or possibly even allow
Bidder No. 2 to terminate or renegotiate the terms of its transaction; and (iv)
proposed a per share price below the recent trading prices of the shares of
common stock. In addition, the board of directors determined to reconfirm its
recommendation of the proposed transaction with Yucaipa to the Company's
stockholders.

    Later on June 3, Bidder No. 2 sent a letter to the Company further revising
the June 1 Proposal (as amended by the letter received on June 2). The June 3
letter further reduced a financial representation that Bidder No. 2 had included
in the original June 1 Proposal, which representation had subsequently been
reduced by its June 2 letter. During the night of Saturday, June 4, Bidder No. 2
and its co-investor sent another letter to the Company again revising the June 1
Proposal (as amended by letters received on June 2 and 3). The June 4 letter
attempted to address concerns relating to the achievability of the conditions
precedent contained in Bidder No. 2's debt financing commitment letter by
increasing by up to $22 million the amount of equity Bidder No.2's co-investor
would contribute to the transaction to the extent necessary to offset any
increase in the Company's indebtedness prior to a closing of Bidder No. 2's
proposed transaction. The June 4 letter did not change Bidder No. 2's proposed
purchase price of $8.75 per share. The June 4 letter also extended the expiry
date of the June 1 Proposal to 5:00 p.m. on June 10, 2005 so that it follows the
date of the special meeting.

    The Company's board of directors met during the evening of Monday, June 6
to consider the June 1 Proposal as it had been revised by the June 4 letter.
After Shearman & Sterling LLP and DrKW reviewed the revised June 1 Proposal with
the board of directors, the board of directors determined that the revised June
1 Proposal would not reasonably be expected to result in a superior proposal, as
such term is defined in the Purchase Agreement, because the June 1 Proposal: (i)
was unlikely to be able to be completed for several months, while the

2

<PAGE>

proposed transaction with Yucaipa could, subject to the approval of the
Company's stockholders, likely be completed by the middle of June; (ii) was,
while not formally conditioned on, still (unlike the proposed transaction with
Yucaipa) dependent on obtaining debt financing in order to close, which debt
financing, while the subject of a detailed commitment letter, remained subject
to agreeing definitive documentation with the lead lender as well as some
residual uncertainty surrounding the Company's ability to meet the conditions
precedent specified in the commitment letter; (iii) provided less certainty of
closing (compared to the proposed transaction with Yucaipa), both due to the
risk of adverse developments in the Company's business or in the financial

markets while waiting for a transaction with Bidder No. 2 to close which, if significant enough, could either jeopardize Bidder No. 2's financing or possibly even allow Bidder No. 2 to terminate or renegotiate the terms of its transaction and due to the above described concerns regarding Bidder No. 2's debt financing; and (iv) proposed a per share price below the recent trading prices of the shares of common stock. In reaching its decision, the Company's board of directors also considered the fact that Bidder No. 2 had been participating in the process surrounding the consideration of the Company's strategic alternatives since early November 2004. In addition, the board of directors determined to reconfirm its recommendation of the proposed transaction with Yucaipa to the Company's stockholders.

<div align="center">3</div>

```
</TEXT>
</DOCUMENT>
```

# EXHIBIT G

**Pathmark Stores Common Stock (PTMK)**

Daily prices from 19 August 2004 to 19 August 2005

| As reported | | Data: Adjusted | | Exchange: NASDAQ National Market System | |
|---|---|---|---|---|---|
| Date | Close | Open | High | Low | Volume |
| 20 August 2004 | **7.40** | 7.13 | 7.40 | 6.95 | 49,186 |
| 23 August 2004 | **7.10** | 7.41 | 7.42 | 7.04 | 53,308 |
| 24 August 2004 | **7.23** | 7.20 | 7.29 | 7.15 | 10,311 |
| 25 August 2004 | **7.34** | 7.14 | 7.35 | 7.12 | 10,759 |
| 26 August 2004 | **7.30** | 7.26 | 7.53 | 7.24 | 19,755 |
| 27 August 2004 | **7.25** | 7.29 | 7.33 | 7.25 | 6,933 |
| 30 August 2004 | **7.16** | 7.25 | 7.25 | 7.04 | 3,330 |
| 31 August 2004 | **7.08** | 7.04 | 7.15 | 7.02 | 25,092 |
| 1 September 2004 | **7.33** | 7.04 | 7.64 | 7.02 | 55,784 |
| 2 September 2004 | **7.34** | 7.28 | 7.41 | 7.27 | 8,230 |
| 3 September 2004 | **7.43** | 7.38 | 7.45 | 7.21 | 14,042 |
| 7 September 2004 | **7.32** | 7.34 | 7.40 | 7.20 | 22,186 |
| 8 September 2004 | **7.17** | 7.26 | 7.28 | 7.17 | 32,934 |
| 9 September 2004 | **5.85** | 6.19 | 6.25 | 5.80 | 626,949 |
| 10 September 2004 | **5.76** | 5.85 | 5.93 | 5.42 | 158,107 |
| 13 September 2004 | **5.54** | 5.65 | 5.77 | 5.26 | 220,182 |
| 14 September 2004 | **5.59** | 5.48 | 5.61 | 5.37 | 74,156 |
| 15 September 2004 | **5.63** | 5.55 | 5.63 | 5.50 | 228,154 |
| 16 September 2004 | **5.52** | 5.59 | 5.64 | 5.42 | 119,493 |
| 17 September 2004 | **5.48** | 5.40 | 5.71 | 5.40 | 131,318 |
| 20 September 2004 | **5.30** | 5.34 | 5.34 | 5.11 | 121,694 |
| 21 September 2004 | **5.32** | 5.30 | 5.37 | 5.26 | 194,165 |
| 22 September 2004 | **5.23** | 5.25 | 5.30 | 5.16 | 86,249 |
| 23 September 2004 | **5.20** | 5.15 | 5.26 | 4.95 | 80,401 |
| 24 September 2004 | **5.04** | 5.17 | 5.18 | 4.94 | 60,691 |
| 27 September 2004 | **5.10** | 5.05 | 5.12 | 4.99 | 34,865 |
| 28 September 2004 | **4.99** | 5.07 | 5.13 | 4.98 | 38,519 |
| 29 September 2004 | **5.07** | 4.96 | 5.07 | 4.95 | 16,746 |
| 30 September 2004 | **4.85** | 4.96 | 5.15 | 4.80 | 103,336 |
| 1 October 2004 | **4.98** | 4.90 | 5.26 | 4.79 | 201,976 |
| 4 October 2004 | **5.17** | 5.09 | 5.17 | 5.00 | 133,034 |
| 5 October 2004 | **4.97** | 5.19 | 5.19 | 4.82 | 60,869 |
| 6 October 2004 | **5.07** | 4.86 | 5.16 | 4.85 | 118,855 |
| 7 October 2004 | **5.10** | 5.08 | 5.11 | 5.06 | 24,112 |
| 8 October 2004 | **4.98** | 5.03 | 5.08 | 4.95 | 79,455 |

| | | | | |
|---|---|---|---|---|
| 11 October 2004 | **5.05** | 5.03 | 5.05 | 4.98 | 40,398 |
| 12 October 2004 | **4.95** | 5.00 | 5.03 | 4.92 | 36,245 |
| 13 October 2004 | **4.94** | 4.99 | 5.10 | 4.89 | 33,877 |
| 14 October 2004 | **4.80** | 4.82 | 4.92 | 4.80 | 23,750 |
| 15 October 2004 | **4.87** | 4.85 | 4.89 | 4.76 | 38,663 |
| 18 October 2004 | **4.75** | 4.94 | 5.00 | 4.68 | 59,634 |
| 19 October 2004 | **4.58** | 4.81 | 4.81 | 4.44 | 97,332 |
| 20 October 2004 | **4.59** | 4.50 | 4.72 | 4.50 | 38,331 |
| 21 October 2004 | **4.50** | 4.50 | 4.69 | 4.49 | 114,771 |
| 22 October 2004 | **4.17** | 4.55 | 4.67 | 4.09 | 163,628 |
| 25 October 2004 | **3.50** | 3.94 | 4.00 | 3.20 | 1,086,613 |
| 26 October 2004 | **3.85** | 3.52 | 4.14 | 3.49 | 1,568,990 |
| 27 October 2004 | **4.05** | 3.93 | 4.43 | 3.85 | 423,496 |
| 28 October 2004 | **4.04** | 4.05 | 4.20 | 3.98 | 315,524 |
| 29 October 2004 | **4.31** | 4.01 | 4.41 | 4.00 | 341,831 |
| 1 November 2004 | **4.37** | 4.32 | 4.48 | 4.24 | 160,677 |
| 2 November 2004 | **4.38** | 4.41 | 4.45 | 4.35 | 112,737 |
| 3 November 2004 | **4.43** | 4.43 | 4.50 | 4.31 | 176,923 |
| 4 November 2004 | **4.48** | 4.40 | 4.50 | 4.39 | 56,415 |
| 5 November 2004 | **4.88** | 4.43 | 4.88 | 4.41 | 431,343 |
| 8 November 2004 | **4.93** | 4.90 | 4.93 | 4.71 | 244,141 |
| 9 November 2004 | **4.90** | 4.83 | 4.97 | 4.79 | 79,219 |
| 10 November 2004 | **5.10** | 4.95 | 5.10 | 4.88 | 249,903 |
| 11 November 2004 | **5.31** | 5.08 | 5.37 | 4.94 | 89,806 |
| 12 November 2004 | **5.64** | 5.39 | 5.76 | 5.05 | 178,479 |
| 15 November 2004 | **5.51** | 5.75 | 5.75 | 5.30 | 223,053 |
| 16 November 2004 | **5.48** | 5.50 | 5.69 | 5.47 | 36,632 |
| 17 November 2004 | **5.57** | 5.55 | 5.64 | 5.40 | 132,395 |
| 18 November 2004 | **5.31** | 5.55 | 5.60 | 4.54 | 441,195 |
| 19 November 2004 | **5.23** | 5.20 | 5.31 | 5.18 | 38,677 |
| 22 November 2004 | **5.34** | 5.15 | 5.46 | 5.12 | 85,291 |
| 23 November 2004 | **5.44** | 5.30 | 5.48 | 5.19 | 60,389 |
| 24 November 2004 | **5.38** | 5.48 | 5.50 | 5.29 | 35,889 |
| 26 November 2004 | **5.39** | 5.50 | 5.50 | 5.39 | 8,370 |
| 29 November 2004 | **5.50** | 5.50 | 5.58 | 5.19 | 204,999 |
| 30 November 2004 | **5.51** | 5.51 | 5.71 | 5.40 | 119,302 |
| 1 December 2004 | **5.56** | 5.49 | 5.92 | 5.40 | 251,472 |
| 2 December 2004 | **5.97** | 5.65 | 6.98 | 5.65 | 911,597 |
| 3 December 2004 | **5.97** | 6.00 | 6.30 | 5.89 | 289,656 |

| | | | | |
|---|---|---|---|---|
| 6 December 2004 | **5.65** | 5.97 | 5.97 | 5.63 | 198,477 |
| 7 December 2004 | **5.84** | 5.64 | 5.99 | 5.60 | 292,200 |
| 8 December 2004 | **5.72** | 5.93 | 5.93 | 5.64 | 181,706 |
| 9 December 2004 | **5.70** | 5.65 | 5.87 | 5.53 | 85,693 |
| 10 December 2004 | **5.73** | 5.79 | 5.79 | 5.61 | 89,738 |
| 13 December 2004 | **5.70** | 5.60 | 5.75 | 5.55 | 136,004 |
| 14 December 2004 | **5.70** | 5.57 | 5.73 | 5.57 | 78,981 |
| 15 December 2004 | **5.71** | 5.70 | 5.83 | 5.65 | 71,865 |
| 16 December 2004 | **5.60** | 5.80 | 5.91 | 5.50 | 134,094 |
| 17 December 2004 | **5.50** | 5.65 | 5.67 | 5.50 | 54,464 |
| 20 December 2004 | **5.69** | 5.65 | 5.77 | 5.58 | 103,327 |
| 21 December 2004 | **5.69** | 5.82 | 5.82 | 5.60 | 56,494 |
| 22 December 2004 | **5.65** | 5.62 | 5.80 | 5.62 | 73,814 |
| 23 December 2004 | **5.72** | 5.80 | 5.80 | 5.60 | 46,686 |
| 27 December 2004 | **5.73** | 5.45 | 5.81 | 5.38 | 163,048 |
| 28 December 2004 | **5.80** | 5.75 | 5.90 | 5.70 | 89,728 |
| 29 December 2004 | **5.80** | 5.70 | 5.85 | 5.66 | 65,880 |
| 30 December 2004 | **5.76** | 5.85 | 5.87 | 5.76 | 40,534 |
| 31 December 2004 | **5.81** | 5.74 | 5.82 | 5.70 | 35,724 |
| 3 January 2005 | **5.71** | 5.63 | 5.81 | 5.63 | 58,873 |
| 4 January 2005 | **5.36** | 5.68 | 5.81 | 5.22 | 127,288 |
| 5 January 2005 | **4.95** | 5.29 | 5.31 | 4.75 | 370,730 |
| 6 January 2005 | **4.93** | 4.86 | 5.16 | 4.86 | 120,482 |
| 7 January 2005 | **4.87** | 4.97 | 5.04 | 4.69 | 178,788 |
| 10 January 2005 | **4.86** | 4.76 | 4.89 | 4.74 | 176,909 |
| 11 January 2005 | **4.65** | 4.78 | 4.80 | 4.64 | 79,224 |
| 12 January 2005 | **4.56** | 4.71 | 4.71 | 4.45 | 144,553 |
| 13 January 2005 | **4.88** | 4.59 | 4.94 | 4.56 | 206,618 |
| 14 January 2005 | **4.98** | 4.92 | 4.98 | 4.78 | 130,541 |
| 18 January 2005 | **4.95** | 5.01 | 5.20 | 4.91 | 200,816 |
| 19 January 2005 | **4.80** | 4.97 | 5.09 | 4.79 | 194,780 |
| 20 January 2005 | **4.83** | 5.10 | 5.10 | 4.80 | 135,470 |
| 21 January 2005 | **4.70** | 4.85 | 4.85 | 4.63 | 103,367 |
| 24 January 2005 | **4.64** | 4.75 | 4.91 | 4.63 | 26,179 |
| 25 January 2005 | **4.65** | 4.71 | 4.75 | 4.58 | 384,356 |
| 26 January 2005 | **4.81** | 4.78 | 4.85 | 4.55 | 128,493 |
| 27 January 2005 | **4.64** | 4.74 | 4.77 | 4.58 | 86,279 |
| 28 January 2005 | **4.58** | 4.66 | 4.74 | 4.50 | 109,005 |
| 31 January 2005 | **4.74** | 4.62 | 4.74 | 4.62 | 31,118 |

| | | | | |
|---|---|---|---|---|
| 1 February 2005 | **4.76** | 4.67 | 4.84 | 4.67 | 93,437 |
| 2 February 2005 | **4.89** | 4.76 | 4.90 | 4.71 | 155,876 |
| 3 February 2005 | **5.09** | 4.92 | 5.11 | 4.87 | 282,662 |
| 4 February 2005 | **5.13** | 5.14 | 5.19 | 5.00 | 56,521 |
| 7 February 2005 | **5.06** | 5.13 | 5.24 | 4.99 | 68,401 |
| 8 February 2005 | **5.23** | 5.06 | 5.28 | 5.05 | 88,942 |
| 9 February 2005 | **5.20** | 5.30 | 5.40 | 5.20 | 99,422 |
| 10 February 2005 | **5.10** | 5.17 | 5.22 | 5.01 | 39,409 |
| 11 February 2005 | **5.10** | 5.10 | 5.16 | 5.08 | 63,122 |
| 14 February 2005 | **5.13** | 5.10 | 5.16 | 5.03 | 96,152 |
| 15 February 2005 | **5.19** | 5.02 | 5.43 | 5.02 | 78,658 |
| 16 February 2005 | **5.21** | 5.16 | 5.41 | 5.12 | 21,917 |
| 17 February 2005 | **5.15** | 5.09 | 5.40 | 5.08 | 77,598 |
| 18 February 2005 | **5.19** | 5.19 | 5.31 | 5.14 | 51,012 |
| 22 February 2005 | **5.11** | 5.24 | 5.24 | 4.96 | 100,336 |
| 23 February 2005 | **4.90** | 5.10 | 5.10 | 4.71 | 156,783 |
| 24 February 2005 | **4.80** | 4.90 | 4.95 | 4.74 | 60,569 |
| 25 February 2005 | **4.68** | 4.70 | 4.78 | 4.65 | 129,488 |
| 28 February 2005 | **4.97** | 5.15 | 5.26 | 4.85 | 489,415 |
| 1 March 2005 | **5.02** | 5.08 | 5.10 | 5.01 | 122,144 |
| 2 March 2005 | **5.05** | 4.93 | 5.05 | 4.85 | 101,713 |
| 3 March 2005 | **5.05** | 5.01 | 5.21 | 4.97 | 179,569 |
| 4 March 2005 | **5.11** | 5.14 | 5.14 | 5.05 | 60,352 |
| 7 March 2005 | **5.03** | 5.04 | 5.12 | 4.93 | 67,223 |
| 8 March 2005 | **5.10** | 5.09 | 5.10 | 5.00 | 101,554 |
| 9 March 2005 | **4.91** | 5.05 | 5.05 | 4.91 | 34,913 |
| 10 March 2005 | **4.68** | 4.90 | 5.04 | 4.53 | 251,846 |
| 11 March 2005 | **4.80** | 4.60 | 4.83 | 4.60 | 87,761 |
| 14 March 2005 | **4.68** | 4.80 | 4.81 | 4.68 | 41,909 |
| 15 March 2005 | **4.87** | 4.72 | 4.97 | 4.56 | 200,164 |
| 16 March 2005 | **4.79** | 4.95 | 4.95 | 4.70 | 78,246 |
| 17 March 2005 | **4.86** | 4.85 | 4.95 | 4.82 | 167,885 |
| 18 March 2005 | **4.82** | 4.93 | 4.94 | 4.76 | 264,291 |
| 21 March 2005 | **4.69** | 4.71 | 4.83 | 4.63 | 191,045 |
| 22 March 2005 | **4.61** | 4.67 | 4.75 | 4.58 | 118,171 |
| 23 March 2005 | **4.48** | 4.57 | 4.63 | 4.48 | 79,624 |
| 24 March 2005 | **5.92** | 5.97 | 6.74 | 5.51 | 3,448,475 |
| 28 March 2005 | **6.19** | 5.93 | 6.70 | 5.93 | 1,085,889 |
| 29 March 2005 | **6.11** | 6.25 | 6.44 | 6.00 | 417,299 |

| | | | | |
|---|---|---|---|---|
| 30 March 2005 | **6.20** | 6.20 | 6.35 | 6.06 | 344,131 |
| 31 March 2005 | **6.31** | 6.20 | 6.32 | 6.03 | 594,066 |
| 1 April 2005 | **6.27** | 6.34 | 6.34 | 6.01 | 206,165 |
| 4 April 2005 | **6.12** | 6.10 | 6.25 | 5.99 | 194,961 |
| 5 April 2005 | **6.03** | 6.16 | 6.27 | 5.96 | 131,260 |
| 6 April 2005 | **6.00** | 6.00 | 6.10 | 5.93 | 255,800 |
| 7 April 2005 | **6.02** | 6.04 | 6.05 | 5.94 | 433,397 |
| 8 April 2005 | **6.21** | 6.04 | 6.30 | 5.99 | 322,816 |
| 11 April 2005 | **6.15** | 6.27 | 6.27 | 6.05 | 251,324 |
| 12 April 2005 | **6.25** | 6.15 | 6.30 | 6.06 | 192,611 |
| 13 April 2005 | **7.11** | 6.41 | 7.22 | 6.35 | 1,891,590 |
| 14 April 2005 | **6.89** | 7.07 | 7.20 | 6.89 | 474,149 |
| 15 April 2005 | **6.81** | 6.88 | 7.06 | 6.75 | 323,492 |
| 18 April 2005 | **7.00** | 6.95 | 7.23 | 6.67 | 356,960 |
| 19 April 2005 | **7.11** | 6.95 | 7.25 | 6.95 | 344,702 |
| 20 April 2005 | **7.41** | 7.19 | 7.49 | 7.17 | 337,086 |
| 21 April 2005 | **7.53** | 7.48 | 7.55 | 7.41 | 103,670 |
| 22 April 2005 | **7.23** | 7.48 | 7.50 | 7.11 | 184,671 |
| 25 April 2005 | **7.78** | 7.35 | 7.95 | 7.30 | 412,869 |
| 26 April 2005 | **7.93** | 7.85 | 8.00 | 7.80 | 271,113 |
| 27 April 2005 | **7.71** | 7.95 | 8.10 | 7.68 | 233,732 |
| 28 April 2005 | **7.43** | 7.63 | 7.96 | 7.36 | 147,374 |
| 29 April 2005 | **7.72** | 7.42 | 7.75 | 7.29 | 208,268 |
| 2 May 2005 | **8.05** | 7.72 | 8.05 | 7.60 | 452,583 |
| 3 May 2005 | **7.88** | 8.09 | 8.09 | 7.87 | 533,844 |
| 4 May 2005 | **8.18** | 7.84 | 8.36 | 7.84 | 231,395 |
| 5 May 2005 | **8.11** | 8.20 | 8.24 | 8.00 | 127,083 |
| 6 May 2005 | **8.17** | 8.24 | 8.30 | 8.00 | 120,429 |
| 9 May 2005 | **8.51** | 8.23 | 8.55 | 8.10 | 389,956 |
| 10 May 2005 | **8.76** | 8.55 | 8.81 | 8.35 | 317,935 |
| 11 May 2005 | **8.71** | 8.88 | 9.13 | 8.62 | 351,330 |
| 12 May 2005 | **8.59** | 8.66 | 8.72 | 8.45 | 198,938 |
| 13 May 2005 | **8.58** | 8.59 | 8.77 | 8.49 | 123,048 |
| 16 May 2005 | **8.53** | 8.54 | 8.63 | 8.35 | 180,823 |
| 17 May 2005 | **8.79** | 8.49 | 8.88 | 8.49 | 76,067 |
| 18 May 2005 | **9.11** | 8.73 | 9.14 | 8.70 | 183,706 |
| 19 May 2005 | **8.98** | 9.08 | 9.31 | 8.82 | 105,532 |
| 20 May 2005 | **8.92** | 8.78 | 8.94 | 8.65 | 298,148 |
| 23 May 2005 | **8.97** | 8.81 | 9.13 | 8.75 | 287,516 |

| | | | | |
|---|---|---|---|---|
| 24 May 2005 | **9.26** | 9.03 | 9.38 | 9.00 | 197,336 |
| 25 May 2005 | **9.34** | 9.17 | 9.38 | 9.08 | 634,932 |
| 26 May 2005 | **9.20** | 9.34 | 9.48 | 9.13 | 259,147 |
| 27 May 2005 | **9.26** | 9.20 | 9.27 | 9.12 | 105,731 |
| 31 May 2005 | **8.95** | 9.17 | 9.24 | 8.93 | 473,392 |
| 1 June 2005 | **8.78** | 9.05 | 9.05 | 8.57 | 226,395 |
| 2 June 2005 | **8.83** | 8.65 | 9.00 | 8.55 | 358,810 |
| 3 June 2005 | **8.90** | 8.79 | 8.93 | 8.75 | 281,957 |
| 6 June 2005 | **8.79** | 8.84 | 8.88 | 8.76 | 505,393 |
| 7 June 2005 | **8.62** | 8.79 | 8.84 | 8.62 | 293,189 |
| 8 June 2005 | **8.60** | 8.62 | 8.71 | 8.59 | 243,458 |
| 9 June 2005 | **8.86** | 8.56 | 8.91 | 8.55 | 698,883 |
| 10 June 2005 | **8.99** | 8.90 | 9.00 | 8.86 | 356,269 |
| 13 June 2005 | **9.00** | 8.80 | 9.00 | 8.77 | 325,921 |
| 14 June 2005 | **8.93** | 8.95 | 8.95 | 8.74 | 93,569 |
| 15 June 2005 | **9.11** | 9.37 | 9.48 | 8.80 | 860,163 |
| 16 June 2005 | **9.13** | 9.10 | 9.23 | 9.02 | 355,464 |
| 17 June 2005 | **9.08** | 9.23 | 9.23 | 9.06 | 239,591 |
| 20 June 2005 | **9.14** | 9.02 | 9.19 | 9.02 | 85,971 |
| 21 June 2005 | **9.08** | 9.13 | 9.22 | 9.08 | 202,576 |
| 22 June 2005 | **8.99** | 9.08 | 9.18 | 8.85 | 369,681 |
| 23 June 2005 | **8.86** | 8.97 | 9.08 | 8.86 | 301,919 |
| 24 June 2005 | **8.71** | 8.86 | 8.90 | 8.49 | 404,369 |
| 27 June 2005 | **8.84** | 8.75 | 8.92 | 8.66 | 91,452 |
| 28 June 2005 | **9.20** | 8.89 | 9.20 | 8.84 | 239,574 |
| 29 June 2005 | **8.97** | 9.22 | 9.22 | 8.85 | 393,668 |
| 30 June 2005 | **8.76** | 8.93 | 9.24 | 8.71 | 126,483 |
| 1 July 2005 | **8.88** | 8.78 | 9.10 | 8.63 | 132,422 |
| 5 July 2005 | **9.24** | 8.90 | 9.25 | 8.85 | 125,290 |
| 6 July 2005 | **9.36** | 9.20 | 9.48 | 9.16 | 168,673 |
| 7 July 2005 | **9.52** | 9.34 | 9.68 | 9.10 | 179,162 |
| 8 July 2005 | **9.91** | 9.54 | 10.11 | 9.50 | 205,709 |
| 11 July 2005 | **9.97** | 9.84 | 10.08 | 9.75 | 365,331 |
| 12 July 2005 | **9.76** | 9.97 | 9.99 | 9.69 | 263,520 |
| 13 July 2005 | **9.62** | 9.80 | 9.95 | 9.60 | 66,837 |
| 14 July 2005 | **9.89** | 9.81 | 10.00 | 9.77 | 155,074 |
| 15 July 2005 | **9.63** | 9.82 | 9.99 | 9.55 | 90,830 |
| 18 July 2005 | **9.64** | 9.63 | 9.65 | 9.45 | 70,075 |
| 19 July 2005 | **10.18** | 9.68 | 10.32 | 9.42 | 320,492 |

| | | | | |
|---|---|---|---|---|
| 20 July 2005 | **11.21** | 10.28 | 11.57 | 10.08 | 535,487 |
| 21 July 2005 | **10.88** | 11.21 | 11.21 | 10.72 | 308,766 |
| 22 July 2005 | **10.90** | 10.88 | 11.04 | 10.72 | 128,583 |
| 25 July 2005 | **10.44** | 10.98 | 11.35 | 10.42 | 172,969 |
| 26 July 2005 | **10.84** | 10.44 | 10.95 | 10.41 | 127,216 |
| 27 July 2005 | **10.80** | 10.87 | 10.93 | 10.31 | 151,551 |
| 28 July 2005 | **10.93** | 10.83 | 10.93 | 10.53 | 167,841 |
| 29 July 2005 | **11.14** | 10.93 | 11.19 | 10.93 | 153,090 |
| 1 August 2005 | **11.04** | 11.17 | 11.19 | 10.76 | 117,511 |
| 2 August 2005 | **10.92** | 11.08 | 11.08 | 10.80 | 101,477 |
| 3 August 2005 | **11.11** | 10.93 | 11.12 | 10.69 | 351,500 |
| 4 August 2005 | **10.50** | 11.07 | 11.17 | 10.48 | 203,595 |
| 5 August 2005 | **10.36** | 10.52 | 10.65 | 9.86 | 392,410 |
| 8 August 2005 | **10.27** | 10.40 | 10.56 | 10.25 | 122,876 |
| 9 August 2005 | **10.62** | 10.30 | 10.71 | 10.22 | 189,004 |
| 10 August 2005 | **10.84** | 10.60 | 10.96 | 10.53 | 153,735 |
| 11 August 2005 | **10.58** | 10.83 | 10.83 | 10.55 | 74,080 |
| 12 August 2005 | **10.44** | 10.61 | 10.61 | 10.16 | 130,099 |
| 15 August 2005 | **10.84** | 10.36 | 10.84 | 10.36 | 73,532 |
| 16 August 2005 | **10.40** | 10.80 | 10.80 | 10.40 | 104,877 |
| 17 August 2005 | **10.35** | 10.35 | 10.52 | 10.32 | 151,235 |
| 18 August 2005 | **10.75** | 10.36 | 11.10 | 10.30 | 171,040 |

Source: Reuters Investor

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.