## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| RICK HARTMAN, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>       v.<br><br>PATHMARK STORES, INC., WILLIAM J. BEGLEY, WARREN F. BRYANT, DANIEL H. FITZGERALD, EUGENE M. FREEDMAN, BRUCE HARTMAN, JAMES L. MOODY, JR., EILEEN R. SCOTT, AND FRANK G. VITRANO,<br><br>                      Defendants. | Civil Action No. 05-403-JJF |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL
William M. Lafferty (#2755)
Susan W. Waesco (#4476)
1201 N. Market Street
Wilmington Delaware 19801
(302) 658-9200
*Attorneys for Defendants Pathmark Stores, Inc. William J. Begley, Warren F. Bryant, Daniel H. Fitzgerald, Eugene M. Freedman, Bruce Hartman, James L. Moody, Jr., Eileen R. Scott, and Frank G. Vitrano*

OF COUNSEL:

SHEARMAN & STERLING LLP
Richard F. Schwed
Alan S. Rabinowitz
599 Lexington Avenue
New York, New York 10022-6069
(212) 848-4000

October 18, 2005

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ................................................................................................... 2

I.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATIONS OF THE PROXY RULES. .......................................................................... 2

    A.  Pathmark's Disclosures Were Accurate And Complete. .................................. 3

    B.  The June Proposal Was Not Material. ............................................... 5

    C.  Plaintiff Has Suffered No Cognizable Injury.................................... 8

II.  PLAINTIFF HAS FAILED TO ALLEGE GROUNDS FOR SECTION 20(a) LIABILITY................................................................................... 9

III.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.................................................................... 11

    A.  Pathmark's Directors Did Not Violate Any Fiduciary Duties. ....................... 11

    B.  Plaintiff's Claims Are Derivative And Demand Is Not Excused. .................. 14

CONCLUSION.............................................................................................. 15

ii.

TABLE OF CITATIONS

Page(s)

**Cases**

*Aegis Corp. v. Goldman,*
    523 F. Supp. 1273 (S.D.N.Y. 1981) — 5

*Agostino v. Hicks,*
    845 A.2d 1110 (Del. Ch. 2004) — 14

*Barkan v. Amsted Indus.,*
    567 A.2d 1279 (Del. 1989) — 12

*Greenfield v. Heublein, Inc.,*
    575 F. Supp. 1325 (E.D. Pa. 1983), *aff'd,* 742 F.2d 751 (3d
    Cir. 1984) — 4

*Ieradi v. Mylan Laboratories, Inc.,*
    230 F.3d 594 (3d Cir. 2000) — 6

*In re Anderson, Clayton S'holders' Litig.,*
    519 A.2d 669 (Del. Ch. 1986) — 5, 13

*In re JCC Holding Co.,*
    843 A.2d 713 (Del. Ch. 2003) — 5

*In Re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002) — 2

*In re Pennaco Energy, Inc.,*
    787 A.2d 691 (Del. Ch. 2001) — 12

*In re Toys "R" Us S'Holder Litig.,*
    877 A.2d 975 (Del. Ch. 2005) — 12, 13

*In re Tyson Foods, Inc.,*
    2004 WL 1396269 (D. Del. June 17, 2004) — 9, 10

*In re WorldCom Inc. Sec. Litig.,*
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) — 9, 10

*Keyser v. Commonwealth Nat'l Fin. Corp.,*
    644 F. Supp. 1130 (M.D. Pa. 1986) — 7

*Malpiede v. Townson,*
    780 A.2d 1075 (Del. 2001) — 5, 7

iii.

TABLE OF CITATIONS (continued)

Page(s)

*Matador Capital Mgmt. Corp. v. BRC Holdings, Inc.,*
    729 A.2d 280 (Del. Ch. 1998)    5, 13

*Omnicare, Inc. v. NCS Healthcare, Inc.,*
    818 A.2d 914 (Del. 2003)    13

*Paramount Communications, Inc. v. QVC Network Inc.,*
    637 A.2d 34 (Del. 1994)    12

*Rochez Bros., Inc. v. Rhoades,*
    527 F.2d 880 (3d Cir. 1975)    10

*Skeen v. Jo-Ann Stores, Inc.,*
    1999 WL 803974 (Del. Ch. Sept. 27, 1999), *aff'd,* 750 A.2d
    1170 (Del. 2000)    7-8

*Tracinda Corp. v. DaimlerChrysler AG,*
    364 F. Supp. 2d 362 (D. Del. 2005)    9

**Statutes**

8 *Del. C.* § 146    13

## PRELIMINARY STATEMENT

The disclosures in the proxy statement and supplements filed by Pathmark Stores, Inc. ("Pathmark" or the "Company") were not misleading and the transaction with The Yucaipa Companies LLC and certain of its affiliates (collectively, "Yucaipa") to which the Company agreed (the "Yucaipa Transaction") has manifestly benefited the Company's shareholders.    Nothing in plaintiff's opposition brief explains why Pathmark's receipt of a slightly modified proposal on June 1, 2005, which was itself further modified on each of June 2, June 3 and June 4 (the "June Proposal"), which it disclosed to shareholders on June 7, obligated Pathmark to postpone the shareholders' meeting scheduled for June 9.

Plaintiff fails to provide any possible reason why an investor would have considered the information in the June 7 supplement, that a bidder had renewed a previously disclosed and rejected offer, to be material.  Moreover, plaintiff fails to even acknowledge, much less provide a reason to overlook, the fact that the renewed offer was for less than an investor could have received for his or her shares on the open market. Accordingly, plaintiff has failed to demonstrate that Pathmark's disclosures were materially misleading prior to Pathmark's June 7, 2005 supplement to the proxy statement.

Moreover, plaintiff provides no reason why Pathmark or any other company should be held hostage to a rejected bidder's minor modifications of its proposal.    Pathmark received the June Proposal less than ten days before the shareholders' meeting.    Accordingly, nothing Pathmark could have done, short of postponing the meeting, would have prevented plaintiff from bringing a claim related to

the timing of the disclosure of the June Proposal. To require companies in such situations to postpone their shareholders' meetings would be tantamount to giving outside bidders the power to postpone shareholder votes forever – and imperil beneficial transactions – by slightly modifying the terms of their offers on the eve of the vote on a competing transaction. The law cannot support this result.

Accordingly, the complaint should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATIONS OF THE PROXY RULES.

As discussed in Pathmark's opening brief, plaintiff has failed to state a claim for a proxy violation because he has failed to allege a material misrepresentation or omission and failed to allege an injury. *See In Re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002). The alleged failure to disclose the June Proposal could not have been a material omission because (1) the June Proposal *was* disclosed in the June 7 proxy supplement; (2) it represented only a slight modification of Bidder No. 2's previously disclosed proposal; and (3) it involved an all-cash offer to buy all the outstanding shares of Pathmark for less than the then-current share price.

Plaintiff's claim also fails because plaintiff has failed to show any manner in which he has suffered loss due to the allegedly deficient disclosure. The Company's shares traded at prices higher than the $8.75 per share offered in the June Proposal when the offer was made and has traded significantly higher since then. Accordingly, plaintiff could not have suffered any injury.

A.     **Pathmark's Disclosures Were Accurate And Complete.**

Plaintiff's opposition brief confirms that he does not contend that Pathmark's May 6 proxy statement was anything but entirely accurate and complete when issued.  Nor does plaintiff contend that Pathmark's June 7 supplement failed to accurately and completely disclose the June Proposal.  And, as set forth in defendant's opening brief, plaintiff cannot seriously contend that the June 7 disclosure was untimely or otherwise inadequate since the June Proposal was substantially the same as Bidder No. 2's previous offer; represented an offer <u>below</u> the trading price of Pathmark's stock; and was disclosed the morning after the Board considered the latest iteration of four different proposals made by Bidder No. 2 between June 1 and June 4.

Recognizing these fatal flaws, plaintiff now attempts to argue that an earlier supplement, issued on June 2, was misleading because it supposedly "listed 'Bidder No. 2's very limited due diligence' . . . as a reason for rejecting its bid, without any mention of the fact that Bidder No. 2 had already determined it needed no further due diligence."  (Pl. Br. at 11.)  This argument is based entirely on a gross distortion of Pathmark's disclosure.   The June 2 supplement provided only responses to specific questions.  The sole mention of Bidder No. 2 was in response to the question "[w]hy did the Company provide a two-week exclusivity period to Yucaipa when there still appeared to be other possible bidders."  In other words, the supplement's statement regarding Bidder No. 2's "limited due diligence" was in relation to a grant of exclusivity <u>months</u> <u>earlier</u>.  There was no mention of the current status of any bids and no discussion of any bids received after the date of the agreement with Yucaipa.  The supplement did not even discuss previously disclosed post-agreement bids such as Bidder No. 2's proposals in

May.  Accordingly, nothing in what was stated in the June 2 supplement or in the "total mix" of information then available would have led any reasonable investor to conclude that Pathmark's June 2 supplement was intended to comment on the status of bids from Bidder No. 2 that postdated the agreement with Yucaipa.

In addition, as of June 2, the June Proposal was still in flux.  Pathmark's Board of Directors received letters from Bidder No. 2 on June 1 and June 2, met to consider the proposal on June 3 and then, after that meeting, received additional revisions to the proposal on June 3 and during the night of June 4.  The Board then met again on June 6 to review the revised proposal and a proxy supplement was issued the next day. Plaintiff cannot suggest from that record that Pathmark was dilatory in disclosing the June Proposal.  Plaintiff has also pointed to no authority that obligates a company to disclose an offer that is still being revised by the offeror. *See Greenfield v. Heublein, Inc.*, 575 F. Supp. 1325, 1336 (E.D. Pa. 1983) ("[P]remature disclosure of such [preliminary] discussions may in itself be misleading, and do more harm than good to a corporation's shareholders."), *aff'd*, 742 F.2d 751 (3d Cir. 1984).  More fundamentally, plaintiff has not indicated what Pathmark could have disclosed on June 2.  The June Proposal was for the same price as Bidder No. 2's prior proposal and the areas where it arguably differed were still being revised by the bidder.  Accordingly, there was nothing yet to disclose.

In reality, plaintiff is trying to distract the Court by focusing on the June 2 supplement.  Nothing in that supplement discussed the June Proposal or by implication ruled it out.  Moreover, the June Proposal was disclosed on June 7.  Accordingly, the only question before the Court is whether Pathmark fulfilled its obligation to update its

disclosure as new events unfolded. *See Aegis Corp. v. Goldman*, 523 F. Supp. 1273, 1280 (S.D.N.Y. 1981) ("proxy solicitor's obligation to disclose is a continuing one"). The June Proposal, however, was still being revised through Saturday, June 4, and plaintiff argues that even seven days would not be sufficient notice. (Pl. Br. at 12.) Accordingly, even immediate disclosure of each letter as it was received would not have satisfied plaintiff. Therefore, plaintiff is asking this Court to hold that Pathmark was under an obligation to postpone its shareholders' meeting because it had received a slightly revised offer at less than the then-trading price for Pathmark shares. Such a holding would empower any disappointed suitor to endlessly prevent the closing of a rival transaction by the simple expedient of slightly revising its bid. That cannot be the result required under the law. *See In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 669, 676 (Del. Ch. 1986) ("[D]irectors of a Delaware corporation have no duty to delay an otherwise appropriate transaction just because at the last minute a possible alternative arises."); *see also Matador Capital Mgmt. Corp. v. BRC Holdings, Inc.*, 729 A.2d 280, 292 (Del. Ch. 1998) (same).

### B.    The June Proposal Was Not Material.

Plaintiff, perhaps recognizing that it cannot show that the June Proposal was material, argues that materiality "ordinarily cannot be resolved without a trial." (Pl. Br. at 9.) Courts can and do, however, dismiss disclosure claims when, as is the case here, the immateriality of the alleged deficiency is apparent from the pleadings. *See, e.g., Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) (where company had disclosed price of new offer, reasons for rejecting offer were immaterial); *In re JCC Holding Co.*, 843 A.2d 713, 720 (Del. Ch. 2003) ("This court may also determine the materiality of alleged

misstatements or omissions from the face of the proxy statement when that determination does not depend on factual disputes that can be resolved only after an evidentiary hearing. Our law is replete with examples of situations when this court has dismissed disclosure claims on challenges to the sufficiency of the complaint...."); *Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594 (3d Cir. 2000) (same). The June Proposal was immaterial as a matter of law because it was almost identical to Bidder No. 2's prior proposal and it was an all-cash offer at less than the trading price for Pathmark's stock.

As even plaintiff acknowledges, the shareholders were not being asked to vote on Bidder No. 2's proposal, they were being asked to consider only the Yucaipa Transaction. The plaintiff then asks a rhetorical question: "Would the existence of a different bidder, willing to pay $8.75 per share cash, have any bearing on the desirability of [Yucaipa's offer]?" (Pl. Br. at 10.) The answer to that question also answers why the June Proposal was completely immaterial – the shareholders already knew that Bidder No. 2 had offered $8.75 per share back in May. Pathmark's shareholders were well aware that Bidder No. 2 was interested in acquiring the Company and the basic terms under which it was willing to proceed. Both proposals were for 100% of the Company's outstanding common stock at a price of $8.75 per share, below the then trading price for Pathmark's shares.

According to the Complaint, the difference between the two offers is that the June Proposal was "no longer subject to any due diligence." (*See* D.I. #1, ¶ 23.) A due diligence requirement, however, relates mainly to the firmness of an offer, not its value to shareholders. Plaintiff does not even attempt to argue that the removal of a diligence out was material to investors. Rather, plaintiff argues that since the Board of

Directors had listed that issue as one of the reasons for rejecting the earlier proposal, removal of it must have been a material change. That argument is clearly contrary to the facts and contrary to the settled law. Plaintiff has cited no authority for the proposition that a particular factor becomes material simply because it is one of those listed by the Company when rejecting an offer. *See Malpiede*, 780 A.2d at 1087 ("The importance that a stockholder ascribes to the availability of a higher bid in deciding whether to vote for or against a proposed merger is independent of the [issues raised by the board for rejecting it].").

Moreover, the relevant inquiry is whether the existence of a renewed offer without a diligence out would be material to a reasonable investor, not whether such offer should now be more acceptable to a board of directors. In this instance, such information clearly would not be material. Any shareholder inclined to pursue an all-cash offer of $8.75 per share rather than accept the Yucaipa Transaction could simply sell his stock on the open market and receive more than $8.75 in return. In other words, when the market (with full knowledge of the impending Yucaipa Transaction) has already set a trading price higher than that of the June Proposal, the existence of that proposal does not tell investors anything new about the proper valuation of their shares. Accordingly, the only all-cash offers that could have potentially interested a shareholder voting on the Yucaipa Transaction would have been those that offered more than the then-current trading price of the stock.

The June Proposal thus falls into the category of offers that a company arguably need not disclose at all. *See Keyser v. Commonwealth Nat'l Fin. Corp.*, 644 F. Supp. 1130, 1140 (M.D. Pa. 1986); *Skeen v. Jo-Ann Stores, Inc.*, 1999 WL 803974, at *7

(Del. Ch. Sept. 27, 1999), *aff'd*, 750 A.2d 1170 (Del. 2000) (company did not have to disclose details of proposals they opted not to pursue). *A fortiori*, Pathmark's chosen path – to supplement its disclosures on May 26 and June 7 – certainly satisfied the disclosure requirements.

### C.    Plaintiff Has Suffered No Cognizable Injury.

In his opposition brief, plaintiff admits that he is seeking damages solely for the "lost . . . opportunity to reject an existing transaction in favor of a different, seemingly more attractive alternative." (Pl. Br. at 12.) That "seemingly more attractive alternative," however, offered Pathmark shareholders only $8.75 per share, less than they could have received on the open market. If plaintiff had truly been interested in trading his Pathmark stock for $8.75, he could have sold his stock on the open market at just about any time from the date of its disclosure until now and received more than that. Simply put, plaintiff's purported "lost opportunity" to sell his shares at $8.75 was not lost at all (and to this date still has not been lost). Accordingly, plaintiff cannot state a damage claim of any kind and this case must be dismissed.

The procedural posture of this case also demonstrates that plaintiff's allegation of lost opportunity is counterfactual. Plaintiff is attempting to argue that had there been more time to consider the June Proposal, he and a majority of shareholders would have voted against the Yucaipa Transaction, forcing the Company to accept the June Proposal. But plaintiff allegedly has refrained from selling his shares of Pathmark stock on the open market at prices much higher than $8.75. Accordingly, we cannot assume that plaintiff would have voted to accept a proposal offering even less than the then trading price.

## II.   PLAINTIFF HAS FAILED TO ALLEGE GROUNDS FOR SECTION 20(a) LIABILITY.

Since plaintiff has failed to state a primary violation of Section 14(a), plaintiff's Section 20(a) "controlling person" claim must also fail. *See In re Tyson Foods, Inc.*, 2004 WL 1396269, at *13 (D. Del. June 17, 2004). Moreover, as even plaintiff acknowledges (*see* Pl. Br. at 15), the Section 20(a) claim must also fail where, as here, there are no allegations that the individuals in question controlled the primary violator or culpably participated in the alleged violation. *See Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 388 (D. Del. 2005).

Rather than pointing to some conduct by individual defendants evidencing control and culpable participation, plaintiff argues that all defendants are liable under Section 20(a) because the "alleged wrongdoing concerns a corporate transaction approved by the Board of Directors, and associated disclosures also alleged to be approved by the Board of Directors." (*See* Pl. Br. at 15.)  Plaintiff's citation to *In re WorldCom Inc. Securities Litigation*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003), however, is inapposite. *WorldCom* involved manifest misrepresentations in SEC filings signed by the individual defendants. In this case, unlike *WorldCom*, the proxy statements issued by the Company were not signed by the Board and were accurate and complete when issued. Only the proximity of that disclosure to the date of the shareholders' meeting is being challenged.  Therefore, unlike in *WorldCom*, one cannot presume that the individual defendants signed false filings.

Furthermore, plaintiff has failed to allege that any of the individual defendants "culpably participated" in a Section 14(a) violation, an issue not relevant in *WorldCom* because the Second Circuit does not follow the Third Circuit's lead on this

subject. *Compare WorldCom*, 294 F. Supp. 2d at 415 (plaintiffs need not allege culpable participation) *with Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir. 1975) (plaintiff must allege culpable participation). Under Third Circuit law, the plaintiff bears the burden of demonstrating that an alleged controlling person culpably participated in the purported deception. *See Tyson*, 2004 WL 1396269, at *13 ("Third Circuit precedent requires that a plaintiff prove culpable participation, *i.e.*, 'deliberate and intentional[ ]' action or inaction by the defendant 'to further the fraud.'") (quoting *Rochez Bros.*, 527 F.2d at 890) (alterations in original). But the alleged inaction of not updating Pathmark's proxy statements is not sufficiently culpable conduct. *See Tyson*, 2004 WL 1396269, at *13. Plaintiff implicitly admits his failure by attempting to recast Pathmark's alleged failure to promptly update the proxy statement into an attack on the accuracy of the June 2 update. On June 2, however, Bidder No. 2's latest proposal was still in flux and there was nothing definitive to disclose. Moreover, as discussed above, the June 2 proxy supplement answered questions about certain past decisions made by the Company. It was completely silent as to whether or not other bids were under consideration. Therefore, nothing in the supplement was rendered misleading by the not yet disclosed existence of a slightly revised proposal.

## III.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY.

Plaintiff claims that Pathmark's directors "did not act to maximize the value for shareholders when they declined to seriously consider, or permit shareholders to consider, the alternative bid." (Pl. Br. at 17.) Leaving aside the issue that plaintiff has provided nothing to support his conclusory allegation that the directors failed to consider the June Proposal, plaintiff fails to explain why the Company should have considered a cash-out offer for less than shareholders could receive on the open market. Moreover, plaintiff still has not pointed to a single violation of the duty of loyalty, has not cited a single conflict of interest among the Board of Directors, and has not given any reason to excuse his failure to make a demand on the Board.

Since plaintiff has failed to provide any reason why the Court should substitute its own judgment for that of the Board, since there is no allegation that can be reasonably construed as questioning the Board of Directors' fulfillment of its duties, and since plaintiff cannot point to any way in which he was damaged, this claim must be dismissed.

### A.    Pathmark's Directors Did Not Violate Any Fiduciary Duties.

As discussed in Pathmark's opening brief, the decision whether to proceed with the Yucaipa Transaction or to abandon it in pursuit of other possible transactions was a business judgment made by Pathmark's Board after consulting with its advisers and after engaging in months of effort to secure the best possible transaction for Pathmark and its shareholders. Rather than challenging that process, plaintiff simply disagrees with several of the Board's ultimate decisions without even stating a reason for his disagreement. That is not the basis for a challenge to a director's good faith in

fulfilling his fiduciary duties. *See In re Toys "R" Us S'Holder Litig.*, 877 A.2d 975, 1021 (Del. Ch. 2005) ("The central purpose of *Revlon* is to ensure the fidelity of fiduciaries. It is not a license for the judiciary to set arbitrary limits on the contract terms that fiduciaries acting loyally and carefully can shape in the pursuit of their stockholders' interest."); *In re Pennaco Energy, Inc.*, 787 A.2d 691, 705 (Del. Ch. 2001) (Court's role is solely to "examine whether the directors have undertaken reasonable efforts to fulfill their obligation to secure the best available price, and not to determine whether the directors have performed flawlessly.").

As was discussed in the opening brief, it is immaterial whether *Revlon* applies since Pathmark's actions are more than defensible under any standard of review. Even under *Revlon*, the directors simply must act reasonably to attempt to secure the best value for the company's shareholders. As the Delaware Supreme Court has held, "[i]f a board selected one of several reasonable alternatives, a court should not second-guess that choice even though it might have decided otherwise." *Paramount Communications, Inc. v. QVC Network Inc.*, 637 A.2d 34, 45 (Del. 1994); *see Barkan v. Amsted Indus.*, 567 A.2d 1279, 1286 (Del. 1989) (no single blueprint for directors to follow); *see also* Opening Br. at 23-25.

Plaintiff cannot point to any action by the directors that was not reasonably geared towards obtaining the best value for Pathmark's shareholders. In fact, the only actions questioned by plaintiff – the Board's alleged failure to postpone the vote to more fully consider the June Proposal and Pathmark's agreement to a "force the vote" provision – are specifically authorized by Delaware law. Under Delaware law, companies are simply not required to postpone shareholder votes every time another

bidder modifies its expression of interest. *In re Anderson, Clayton S'holders' Litig.*, 519 A.2d 669, 676 (Del. Ch. 1986) ("[D]irectors of a Delaware corporation have no duty to delay an otherwise appropriate transaction just because at the last minute a possible alternative arises."); *see also Matador Capital Mgmt. v. BRC Holdings, Inc.*, 729 A.2d 280, 292 (Del. Ch. 1998) (same).

As for the "force the vote" provision, Delaware does not "prevent [a board] from offering bidders deal protections," *In re Toys "R" Us, Inc. S'holder Litig.*, 877 A.2d 975, 1000 (Del. Ch. 2005), and specifically authorizes force the vote provisions. *See* Del. C. § 146 ("A corporation may agree to submit a matter to a vote of its stockholders whether or not the board of directors determines at any time subsequent to approving such matter that such matter is no longer advisable and recommends that the stockholders reject or vote against the matter."). Plaintiff's reliance on *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914 (Del. 2003), to the contrary is unavailing. In *Omnicare*, the Court questioned a transaction wherein the board agreed to a force the vote provision in conjunction with the acquiror entering into shareholder agreements with two board members who owned a majority of the stock. The court reviewed these protections with heightened scrutiny because the combination of the two rendered any opposition to the transaction or review by other shareholders impossible. The *Omnicare* court never said that a board that agrees to a force the vote provision – a provision that is specifically authorized by statute – absent an associated shareholder agreement, as was the case here, has violated its fiduciary duties.

Finally, plaintiff still has not shown a single way in which he was damaged by the Yucaipa Transaction. In effect, the course of events has proven

14.

Pathmark's directors to have been right in rejecting the June Proposal and has shown how singularly inappropriate it would be to substitute plaintiff's judgment or the Court's judgment for that of the directors. At a minimum, plaintiff could not have suffered any injury as a result of any alleged breach of fiduciary duty. *See* Point I.C, *supra*.

**B.    Plaintiff's Claims Are Derivative And Demand Is Not Excused.**

The claims in plaintiff's complaint – that Pathmark's Board agreed too quickly to Yucaipa's investment in the Company and failed to pursue sufficiently other possible transactions – are derivative in nature. *See Agostino v. Hicks*, 845 A.2d 1110, 1123 (Del. Ch. 2004). Tacitly admitting that those claims fail to state a direct claim and that demand is not excused, plaintiff now says that the "gist of the fiduciary [duty] claims is that defendants' non-disclosures and the limitations defendants put upon themselves injured shareholders by denying them the opportunity to cast informed votes on the Yucaipa Transaction." (Pl. Br. at 18.) Count III of the complaint, however, makes no mention of shareholders' interest in casting informed votes and plaintiff cannot now amend his complaint *sub rosa*. Moreover, for the reasons discussed above, the disclosures in the proxy statements were not misleading so there was no conceivable impairment of any shareholder's ability to cast an informed vote.

Accordingly, Count III of the complaint does not state a direct claim and must be dismissed for failure to make demand upon the corporation.

## CONCLUSION

For the foregoing reasons and those stated in the Opening Brief, defendants respectfully ask this Court to dismiss the Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL

William M. Lafferty (#2755)
Susan W. Waesco (#4476)
1201 N. Market Street
Wilmington Delaware 19801
(302) 658-9200
    *Attorneys for Defendants Pathmark Stores,*
    *Inc. William J. Begley, Warren F. Bryant,*
    *Daniel H. Fitzgerald, Eugene M.*
    *Freedman, Bruce Hartman, James L.*
    *Moody, Jr., Eileen R. Scott, and Frank G.*
    *Vitrano*

OF COUNSEL:

SHEARMAN & STERLING LLP
Richard F. Schwed
Alan Rabinowitz
599 Lexington Ave.
New York, NY 10022
(212) 848-4000

October 18, 2005

## CERTIFICATE OF SERVICE

I, William M. Lafferty, hereby certify that on October 18th, 2005 I electronically

filed the **Reply Brief in Further Support of Defendants' Motion to Dismiss**, with the Clerk of

Court using CM/ECF, which will send notification of such filing(s) to the following:

> Elizabeth M. McGeever
> Prickett, Jones & Elliott, P.A.
> 1310 King Street
> Wilmington, DE  19801

I also certify that copies were caused to be served on October 18th, 2005 upon the

following in the manner indicated:

**BY HAND:**

Elizabeth M. McGeever
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE  19801

MORRIS, NICHOLS, ARSHT & TUNNELL

William M. Lafferty (#2755)
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200
wlafferty@mnat.com
   Attorneys for Defendants

October 18, 2005